THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM C. BONES, Appellant. [764 NYS2d 743] —Appeal from a judgment of Niagara County Court (Sperrazza, J.), entered December 1, 2000, convicting defendant after a jury trial of, inter alia, rape in the first degree.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him following a jury trial of rape in the first degree (Penal Law § 130.35 [1]) and criminal possession of a controlled substance in the seventh degree (§ 220.03). Viewing the evidence in the light most favorable to the People, we conclude that it is legally sufficient to support the rape conviction (*see generally People v Bleakley,* 69 NY2d 490, 495 [1987]). The testimony of the victim, together with the scientific and medical evidence, is legally sufficient to establish that defendant engaged in sexual intercourse with the victim by forcible compulsion (*see People v Jackson,* 290 AD2d 644, 646 [2002], *lv denied* 98 NY2d 711 [2002]).

The evidence is also legally sufficient to support the conviction of criminal possession of a controlled substance in the seventh degree. That crime "does not require a showing that the unlawfully possessed substance had a particular 'aggregate weight' " (*People v Mendoza,* 81 NY2d 963, 966 [1993]), and the testimony of the victim and another witness establishes that defendant bought crack cocaine for their communal use. Contrary to defendant's further contention, the verdict is not against the weight of the evidence. "Great deference is accorded to the fact-finder's opportunity to view the witnesses,

hear the testimony and observe demeanor" (*Bleakley,* 69 NY2d at 495), and here the credibility of the witnesses was of critical importance.

Defendant further contends that he lacked the mental capacity to waive immunity and testify before the grand jury and that County Court therefore erred in admitting his grand jury testimony in evidence at trial. We reject that contention and conclude that, following the *Huntley* hearing, the court properly denied the motion of defendant to suppress his grand jury testimony. "When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf" (CPL 190.50 [5] [a]). "The waiver of immunity is something offered by the defendant in exchange for an opportunity to testify before the Grand Jury. If a defendant does not so offer, or going one step further, it would seem that if one is not able to so offer a waiver due to some difficulty or disability, then he may not testify before the Grand Jury" (*People v Smith,* 175 Misc 2d 364, 366 [1997]). However, "[e]ven a mentally ill person may give evidentiary testimony provided that individual has sufficient intelligence to understand the nature of an oath and to give a reasonably accurate account of the circumstances in issue" (*People v Gelikkaya,* 84 NY2d 456, 460 [1994]). "As there exists a presumption of sanity, ' "[s]anity being the normal and usual condition of mankind" ' * * *, defendant is presumed to have been competent at the time of the Grand Jury proceeding" (*id.* at 459).

At the *Huntley* hearing, the physician attending defendant at the jail prior to his grand jury appearance testified that, as of the time of that appearance, defendant was a paranoid schizophrenic and also suffered from borderline mental retardation. The physician also testified that defendant was taking an anti-psychotic medication at that time. The physician further testified, however, that his opinion of defendant's competency at that critical time would be "highly speculative," exceeding his expertise. In addition, he noted that a patient with defendant's afflictions may "be competent one day, [and] later in the afternoon they're not competent." Because defendant is presumed to have been competent to testify at the grand jury proceeding and the equivocal testimony of his physician failed to rebut that presumption, we conclude that the court properly refused to suppress defendant's grand jury testimony (*see generally id.* at 460).

We also reject the contention of defendant that reversal is required because the court erred in refusing to assign new

counsel to represent him. Defendant sought new counsel when it became necessary for his attorney to question the propriety of the decisions made by his attorney's fellow public defender with respect to defendant's appearance before the grand jury. To establish his entitlement to reversal based on the court's refusal to assign new counsel, defendant must first show the existence of a potential conflict of interest and then must show that " 'the conduct of his defense was in fact affected by the operation of the conflict of interest' " (*People v Ortiz,* 76 NY2d 652, 657 [1990]; *see People v Harris,* 99 NY2d 202, 210 [2002]; *see also People v Allen,* 88 NY2d 831, 832 [1996]; *People v Jordan,* 190 AD2d 990, 992 [1993], *affd* 83 NY2d 785 [1994]; *People v Lasage,* 221 AD2d 1006, 1007 [1995], *lv denied* 88 NY2d 849 [1996]; *People v Adams,* 185 AD2d 680, 681 [1992], *lv denied* 80 NY2d 926 [1992]). Mere conflict of interest, standing alone, does not constitute reversible error (*see Allen,* 88 NY2d at 832). Here, defendant's attorney competently and vigorously examined his fellow public defender concerning the events that led up to defendant's testimony before the grand jury, and thus it cannot be said that " 'the conduct of his defense was in fact affected by the operation of the conflict of interest' " (*Ortiz,* 76 NY2d at 657). The sentence is not unduly harsh or severe. We have reviewed defendant's remaining contentions and conclude that they are without merit. Present—Pigott, Jr., P.J., Hurlbutt, Gorski and Lawton, JJ.